IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES LEE McCLAIN                                                                    PLAINTIFF

   v.   Civil No. 5:15-cv-05061-PKH-MEF

OFFICER TYLER JAMES MOORE #345,
Fayetteville Police Department; and OFFICER
MICHAEL ANDREW CAUDLE #341,
Fayetteville Police Department                                                       DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights case filed by the Plaintiff, James Lee McClain, pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*.

Plaintiff is currently incarcerated in the Grimes Unit of the Arkansas Department of Correction. The events that are the subject of this case occurred on April 7, 2014, when Plaintiff was arrested. He maintains his constitutional rights were violated in the following ways: (1) he was unlawfully detained, arrested, harassed, discriminated against and profiled based on his race (Black); (2) the search of the bathroom was unlawful; and, (3) Officer Caudle used excessive force against him.

Defendants filed a Motion for Summary Judgment (Doc. 25) on September 21, 2015. On April 14, 2016, a hearing was held to allow the Plaintiff to testify in response to the Motion. Plaintiff appeared by video conference. At the conclusion of the hearing, the Motion was taken under advisement pending preparation of this report and recommendation.

## I. BACKGROUND

On April 7, 2014, at approximately 8:57 p.m., Officer Moore, with the Fayetteville Police Department, was dispatched to 2310 Stone Street, Apartment 3, Fayetteville, Arkansas for a welfare

-1-

check and drug call. *Defendants' Exhibit* (*hereinafter Defts' Ex.*) A at ¶ 5. A caller requested the welfare check on Alicia Greenlee and stated that the residents of the apartment were involved in drugs. *Id.*

Officer Moore's vehicle is equipped with DMVR, a digital mobile video recorder. *Defts' Ex.* A at ¶ 3. It includes a dashboard camera, a rear compartment camera, and a microphone that Officer Moore carries on his uniform. *Id.*

As he approached the apartment, Officer Moore observed several people through the apartment window and there was an "overwhelming odor of marijuana" coming from the area of the apartment. *Defts' Ex.* A at ¶ 6. Officer Moore called for another officer to assist him. *Id.*

Plaintiff testified that he had been to the apartment before. On April 7, 2014, he testified that they had gotten together to support Chelsea, one of the women who lived there, who had cancer and believed she only had a little time to live.

As he waited for the other officer, Officer Moore saw a Black male and a female of unknown race begin walking towards a gold Jaguar automobile. *Defts' Ex.* A at ¶ 7. Given the call about drug use in the apartment, the smell of marijuana, and the fact that the couple had just left apartment 3, Officer Moore concluded he had a reasonable suspicion that the individuals had committed, or were committing, a drug related crime. *Id.* Officer Moore detained the two individuals who identified themselves as James McClain and Tawana Bradford. *Id.*

Officer Moore could smell marijuana emanating from McClain and Bradford. *Defts' Ex.* A at ¶ 7. Officer Moore recognized "McClain from a previous incident in which he ran from me, entered someone else's apartment, locked himself in the bathroom, and flushed drugs down a toilet." *Id.*

Another Black male approached from the area of the apartment. Officer Moore could smell

marijuana on him and detained him as well. *Defts' Ex.* A at ¶ 8. The man was identified as Willie Rochell. *Id.* Rochell appeared to be guarding his left side as though he might be carrying a weapon. *Id.*

Officer Caudle arrived on scene as Officer Moore was speaking to McClain, Bradford, and Rochell. *Defts' Ex.* B at ¶ 3.

Officer Moore ran McClain's, Bradford's, and Rochell's names through an ACIC (Arkansas Crime Information Center) search, and Rochell returned with a prior weapons charge. *Defts' Ex.* A at ¶ 8. Rochell denied consent to search. *Id.* Officer Moore patted him down for weapons.

Officer Moore told Rochell that he could smell marijuana on him. *Defts' Ex.* A at ¶ 8. Rochell admitted to having a couple of grams of marijuana in his jacket pocket. *Id.*

Officer Moore searched Rochell for the marijuana. *Defts' Ex.* A at ¶ 9. As he did so, McClain took off running towards the apartment. *Id.* Officer Moore directed Officer Caudle to pursue him. *Id.* Officer Moore then called for another officer to be dispatched to the scene. *Id.*

After finding the marijuana, Officer Moore placed Rochell under arrest for possession of a controlled substance. *Defts' Ex.* A at ¶ 10. The group from inside the apartment had gathered in a breeze way and yelled for Officer Moore to assist Officer Caudle. *Id.* Linda Woltman, one of the owners of the apartment, said McClain broke down the door. *Id.* She denied knowing McClain. Officer Jones arrived and stayed with Rochell while Officer Moore went to assist Officer Caudle. *Id.*

Plaintiff denied that he took off running towards the apartment. He testified he just went back into the apartment and as the door was closing was grabbed by Officer Caudle who wrestled him to the ground.

Officer Caudle states he directed McClain to stop and grabbed his shirt, but McClain

continued fleeing, at which time, part of his shirt was ripped off. *Defts' Ex.* B at ¶ 3. McClain ran into the door of apartment 3 forcing it open with his shoulder. *Id.*

Officer Caudle knew that McClain had previously fled from officers and attempted to flush drugs down a toilet. *Defts' Ex.* B at ¶ 4. Officer Caudle's vehicle is also equipped with DMVR, and he was carrying the microphone on his uniform. *Id.* at ¶ 5.

As Officer Caudle came to the door of the apartment, he noticed a woman, later identified as Linda Woltman, sitting on a couch facing the front door. *Defts' Ex.* B at ¶ 7. She appeared scared and yelled at Officer Caudle to "get him." *Id.* Woltman stated it was her apartment, but that she did not know McClain. *Id.* Woltman again asked Officer Caudle to get him out. *Id.*

Officer Caudle went towards a bathroom where he had seen McClain run. *Defts' Ex.* B at ¶ 8. Officer Caudle could hear the toilet flushing and believed McClain was trying to destroy drug evidence. *Id.* Officer Caudle was able to activate his DMVR. *Id.*

According to Officer Caudle, McClain was holding the bathroom door shut with his body weight and refused to come out of the bathroom. *Defts' Ex.* B at ¶ 9. McClain refused to obey repeated requests that he come out of the bathroom. *Id.*

Officer Moore went to the rear of the apartment where Officer Caudle was giving McClain verbal commands to exit the bathroom. *Defts' Ex.* A at ¶ 10. McClain was not obeying. *Id.* Officer Moore went outside and asked the resident for a screwdriver. *Id.* Officer Moore went back inside the apartment with Woltman, and she said McClain had broken down her door. *Id.*

Officer Caudle was able to force open the door of the bathroom and get his arm in and then used his shoulder to push the door open. *Defts' Ex.* B at ¶ 10. Officer Caudle "grabbed towards McClain as he tried to pull away, but I was able to grab his right arm and force him to the ground." *Id.* According to Officer Caudle, McClain refused to put his arms behind his back, and Officer

Caudle was able to overpower Plaintiff and get his hands behind his back to handcuff him.  *Id.*  Officer Caudle asserts that he used reasonable force to subdue and restrain McClain.  *Id.*

Officer Caudle observe the top of a clear plastic bag tied in a knot floating in the toilet.  *Defts' Ex.* B at ¶ 11.  Officer Caudle knew these bags were commonly used to hold drugs with the tops tied in that manner.  *Id.*

Officer Moore observed Officer Caudle restraining McClain.  *Defts' Ex.* A at ¶ 11.  In Officer Moore's opinion, Officer Caudle used reasonable force to subdue McClain.  *Id.*

One of the individuals in the apartment identified herself as Alicia Greenlee.  *Defts' Ex.* A at ¶ 11.  Based on the information he had that evening, Officer Moore believes there was probable cause to believe McClain had committed the offenses of residential burglary, tampering with physical evidence, possession of drug paraphernalia, fleeing, and resisting arrest.  *Id.* at ¶ 12.

Officer Caudle took McClain to his patrol car where Plaintiff admitted he ran.  *Defts' Ex.* B at ¶ 12.  Officer Caudle returned to the apartment and asked for consent to search the bathroom.  *Id.* at ¶ 13.  Woltman gave him consent to search the bathroom.  *Id.*  Officer Caudle retrieved the top of the plastic baggie and placed it into evidence.  *Id.*  Officer Caudle placed McClain under arrest.

Plaintiff testified that he believed Officer Moore was harassing him by even running his name because Officer Moore was there for an unrelated purpose - a welfare check on Alicia Greenlee.  *Defts' Ex.* C at p. 8.  Plaintiff testified he clearly was not a white female.  *Id.*  Plaintiff believed Officer Moore detained them for over thirty minutes.[1]  *Id.* at p. 9.  When the call to check their names "came back clean," Plaintiff felt like there was no need to even talk anymore.  *Id.*  Plaintiff felt like he should not have gone to jail when he was not the person of interest.  *Id.* at 11; *see also Defts' Ex.*

---

[1] The audio tapes indicate this time period was much shorter - approximately twelve minutes.

C at p. 23 ("[W]hy are you going to arrest me and I'm not the person you're looking for? I don't fit the description of Alicia Greenlee"). Plaintiff did not believe the officers should even be interested in him.

Plaintiff also believed there was no reason for Officer Moore to have his car towed other than to inconvenience the Plaintiff. *Defts' Ex.* C at p. 18. The audio tapes, however, indicate that the apartment complex owner or manager asked that the car be towed.

Plaintiff also testified that Officer Caudle harassed him by pursuing him and ripping part of his shirt off. *Defts' Ex.* C at p. 12. As a result of the charges brought against him, Plaintiff testified his probation was revoked even though the charges stemming from that evening were eventually dropped. *Id.* Plaintiff testified that the prosecutor did not want to move forward with the charges.

Plaintiff testified he went back into the apartment he had been in previously. *Defts' Ex.* C at p. 13. The apartment belonged to Chelsea Wallace and Linda Woltman. *Id.* Plaintiff states he told Officer Moore that he had medical issues and could not be standing out there too long. *Id.* at p. 14.

Plaintiff testified he was walking towards the couch area when Officer Caudle just busted the door open. *Defts' Ex.* C at p. 14. At this time, Officer Caudle grabbed him, threw him down, and held him down. *Id.* at p. 29. Plaintiff testified Officer Caudle then went and tried to put the door back up. *Id.* Then, according to Plaintiff, Officer Caudle knocked and asked for consent to come in and they said no. *Id.* Then Officer Caudle claimed to have seen something illegal and came back in a second time. *Id.* Plaintiff testified that Officer Caudle grabbed him again, threw him on the ground, put the cuffs on him and took him outside to the squad car. *Id.* at pp. 14-15 & 31. Plaintiff felt the handcuffs were put on him too tightly. *Id.* at p. 32. Plaintiff did not request any medical care. After he bonded out of jail, Plaintiff did not recall if he went to the doctor or to the emergency room.

Plaintiff testified he did not run or flee into a bathroom. *Defts' Ex.* C at pp. 14-15. When asked to explain the audio tape on which Officer Caudle can be heard demanding that Plaintiff come out of the bathroom, Plaintiff testified it might have happened. He said he was drinking that evening. Plaintiff testified Greenlee was one of the girls in the apartment he had been in. *Defts' Ex.* C at p. 21.

## II.  APPLICABLE STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  DISCUSSION

Defendants have moved for summary judgment arguing: (1) there is no proof of harassment, discrimination, or racial profiling; (2) Plaintiff was lawfully detained; (3) there was no illegal search and seizure because Plaintiff had no privacy rights in the apartment in question; (4) no excessive force was used; (5) there was probable cause to arrest the Plaintiff; and, (6) the Defendants are entitled to qualified immunity.

**A.  Discrimination, Harassment, Racial Profiling**

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. "The Equal Protection Clause requires the government to treat similarly situated persons similarly, and dissimilar treatment of those not similarly situated does not result in an equal protection violation." *Ricketts v. City of Columbia, Missouri*, 36 F.3d 775, 781 n. 2 (8th Cir. 1994).

Selective enforcement on the basis of race, i.e., *racial profiling*, violates the Equal Protection Clause. *Whren v. United States*, 517 U.S. 806, 813 (1996). "The Supreme Court has explained that a claimant alleging selective enforcement of facially neutral criminal laws must demonstrate that the challenged law enforcement practice 'had a discriminatory effect and that it was motivated by discriminatory purpose.'" *Giron v. City of Alexander*, 693 F. Supp. 2d 904, 937 (E.D. Ark. 2010) (*quoting Wayte v. United States*, 470 U.S. 598, 608 (1985)).

Here, Plaintiff contends he was being harassed by Officer Moore because they had a prior encounter, and McClain was not the subject of the call. First, with respect to the prior encounter, Officer Moore had no way of knowing McClain was at the apartment where the police had been asked to do a welfare check and were advised that the occupants were using drugs. Second, merely because the police were called to do a welfare check on a specific person does not mean they must

ignore other suspicious activity occurring in their presence. McClain came from the apartment in question. Office Moore detained each person leaving the apartment to check their identification, ask about Greenlee, and determine if there were any warrants on the individuals.

There was no racial profiling involved in the application of the law in this instance. No other evidence of racial profiling has been presented.

### B. Detention

In *Terry v. Ohio*, 392 U.S. 1, 30 (1968), the Supreme Court held that the "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). The Court stated that the "Fourth Amendment requires 'some minimal level of objective justification' for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence" and "less than that for probable cause." *Id.* (citations omitted).

Clearly, Office Moore had reasonable suspicion to detain Plaintiff. McClain came from the apartment where it had been reported that drugs were being used, he smelled of marijuana, and he had a history of being in possession of drugs. McClain's act of fleeing heightened the justification for a *Terry* stop. *United States v. Ramires*, 307 F.3d 713, 716 (8th Cir. 2002).

### C. Probable Cause for Arrest

"Probable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense." *Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir. 2005) (internal quotation marks and citations omitted). "[D]etermining if probable cause exists is not an exact science." *Brodnicki v. City of Omaha*, 73 F.3d 1261, 1265 (8th Cir. 1996).

McClain fled while he was being detained; he entered an apartment by force and the resident asked that he be removed; he smelled of marijuana; marijuana and drug paraphernalia were in plain sight in the apartment; McClain locked himself in the bathroom; and, a plastic baggie consistent with drug use was observed in the toilet. Clearly, probable cause existed to arrest McClain for residential burglary,[2] tampering with physical evidence,[3] possession of drug paraphernalia,[4] fleeing,[5] and resisting arrest.[6]

### D. Illegal Search of the Bathroom

The Fourth Amendment to the United States Constitution protects "personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767 (1966). Specifically, the Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. 4.

The Fourteenth Amendment extends these Fourth Amendment protections against actions by state officers. *Burlison v. Springfield Public Schools*, 708 F.3d 1034, 1039 (8th Cir. 2013). As noted in the text, the Fourth Amendment prohibits "unreasonable" searches, and "[t]he test of reasonableness . . . requires a balancing of the need for the particular search against the invasion of

---

[2] Ark. Code Ann. § 5-39-201 (2016).

[3] Ark. Code Ann. § 5-53-111 (2016).

[4] Ark. Code Ann. § 5-64-443 (2016).

[5] Ark. Code Ann. § 5-54-125 (2016).

[6] Ark. Code Ann. § 5-54-103 (2016).

personal rights that the search entails." *Smook v. Minnahaha County,* 457 F.3d 806, 810 (8th Cir. 2006) (quoting *Bell v. Wolfish,* 441 U.S. 520, 559 (1979)).

Defendants correctly argue that McClain does not have standing to challenge the search of the apartment bathroom. *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998). One who is merely present with the consent of the householder may not claim the protection of the Fourth Amendment. *Id.* Thus, even if we assume McClain was present with the consent of Woltman, he does not having standing to challenge the legality of the search of the bathroom. *See also United States v. Hood*, 551 F. Supp. 2d 766 (W.D. Ark. 2008) (visitor to apartment did not have standing to challenge search of apartment). Moreover, Linda Woltman gave Officer Caudle consent to search the bathroom.

### E. Excessive Force

"Claims that law enforcement officers used excessive force during an arrest or investigatory stop are analyzed under the Fourth Amendment's prohibition of unreasonable searches and seizures." *Schoettle v. Jefferson County*, 788 F.3d 855, 859 (8th Cir. 2015) (*citing Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). The Eighth Circuit in *Schoettle* wrote that:

> [w]hen determining whether unreasonable force was used, courts must give careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Courts should not allow the 20/20 vision of hindsight to cloud the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation. In other words, to comport with the Fourth Amendment, the force must have been objectively reasonable in light of the facts and circumstances confronting the officers at the time it was used. Courts should not consider the officers' subjective motivations when determining whether their use of force was reasonable under the Fourth Amendment.

*Id*. (internal quotation marks and citations omitted). The context in which force is used is an

important factor to be considered and "officers are not required to treat detainees as gently as possible." *Blazek v. City of Iowa City*, 761 F.3d 920, 926 (8th Cir. 2014).

Here, the Plaintiff fled to the apartment where he did not live, forced open the door, closed himself in the bathroom, and refused to come out despite repeated requests. While there is no video of the incident, there are audio tapes that support the Defendants' version of what occurred. Although his statements following Officer Caudle's use of force are recorded, Plaintiff did not complain about the amount of force used or indicate he had any injuries.

### F.  Qualified Immunity

Having found that the facts do not make out a constitutional violation, Defendants are entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### IV.  CONCLUSION

For the reasons stated above, I recommend that Defendants' Motion for Summary Judgment (Doc. 25) be **GRANTED and this CASE DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of July, 2016.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE